IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANNETTE K. O'DONNELL,

                          Plaintiff,                          OPINION AND ORDER

      v.                                                11-cv-160-wmc

CAROLYN W. COLVIN,
Acting Commissioner Social Security,[1]

                         Defendant.

---

      This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Annette O'Donnell, now proceeding *pro se*,[2] seeks reversal of that decision, which found her ineligible for disability insurance benefits and supplemental security income because she is not disabled.  O'Donnell contends that the administrative law judge (ALJ) erred when she rejected her treating physician's opinion that she could not work because of Lyme disease.  O'Donnell also has submitted an additional opinion from her treating physician that was not before the ALJ.  Because there is substantial evidence in the record to support the decision, and no reversible error, the court will affirm the Commissioner's decision and dismiss this case.

FACTS[3]

A. <u>Background</u>

---

      [1]The court has revised the caption to reflect the fact that Carolyn Colvin replaced Michael Astrue as the Acting Commissioner of Social Security after this case was filed.

      [2]O'Donnell was represented by counsel at the administrative hearings held in this case.

      [3]The following facts are drawn from the administrative record (AR).

Plaintiff Annette O'Donnell was born on July 24, 1965. She had a high school education and past relevant work as a hair stylist and a receptionist. AR 18. O'Donnell filed an application for disability insurance benefits and supplemental security income (SSI) on February 13, 2007, alleging disability as of November 9, 1999 because of shoulder and neck pain, migraines, Lyme disease, fibromyalgia and chronic fatigue. AR 110, 138. After the local disability agency denied O'Donnell's application initially and upon reconsideration, she requested a hearing, which was held on October 14, 2009, before Administrative Law Judge Gail Reich. The ALJ heard testimony from O'Donnell and two neutral medical experts. AR 30-40. On the recommendation of one of the medical experts, she continued the hearing to allow O'Donnell to undergo a consultative examination. AR 41. On January 22, 2010, the ALJ reconvened the hearing and heard additional testimony from O'Donnell, a medical expert and vocational expert. AR 45-55.

The ALJ issued her decision on February 8, 2010. In reaching her conclusion that O'Donnell was not disabled, the ALJ performed the required five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920. She found that although O'Donnell had severe impairments of bilateral shoulder osteoarthritis, scoliosis, chronic migraine headache disorder, chronic pain syndrome and post traumatic stress disorder, none of her impairments or a combination of impairments met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.

The ALJ also found that O'Donnell retained the residual functional capacity to perform sedentary work, except for work involving climbing ladders, ropes or scaffolds and

exposure to hazards, including unprotected heights and dangerous machinery.  She found that O'Donnell occasionally could climb stairs and ramps, balance, stoop, kneel, crouch, crawl and reach overhead and push or pull with the upper extremities.  The ALJ noted that O'Donnell could not work in a high stress environment and could have only brief and superficial contact with others, including supervisors, co-workers and the public.  AR 13.

Relying on the testimony of the vocational expert, the ALJ concluded that O'Donnell was not disabled because there were jobs in significant numbers in the national economy that O'Donnell could perform.  AR 20.  O'Donnell appealed the decision, and the Appeals Council acknowledged receipt of a brief from O'Donnell's representative[4] and additional medical records.  AR 4, 207-12.  The ALJ's decision became the final decision of the commissioner on December 23, 2010, when the Appeals Council denied O'Donnell's request for review.  AR 1-3.

## B. Medical Evidence

O'Donnell believes that she contracted Lyme disease as a result of a tick bite when she was nine years old.  AR 190-91.  She had a spinal fusion for scoliosis when she was a teenager, arthroscopic surgery on her right shoulder in 2001 and arthroscopic surgery on her left shoulder in 2004.  AR 240-41, 372-73.  Although O'Donnell recovered well from her shoulder surgeries, she still complained of shoulder pain.  Her treating physician at the time

---

[4]O'Donnell was no longer represented by an attorney at this point, but her sister-in-law, who is an attorney, prepared the brief on her behalf.

noted that although her shoulder was at the plateau of healing, she had "symptom magnification." AR 242-43. Despite demonstrating good strength and range of motion after her second should surgery in 2004, O'Donnell told her provider that she was convinced that she would not be able to work for the rest of her life due to what she described as the disabling problems with her shoulders and neck. AR 651-52. Although she returned to work in 2004, O'Donnell eventually stopped working in June 2006. AR 30-32, 653.

On December 1, 2005, Dr. J. Greg Hoffman wrote in a progress note that O'Donnell had experienced multiple symptoms for years and he was concerned about Lyme disease. AR 570. A note from November 22, 2006, identified O'Donnell's symptoms as extreme fatigue, with exacerbations of symptoms every fourth week, including brain fog. AR 572. On the same date, Dr. Hoffman completed a medical examination and capacity form concerning O'Donnell's work limitations. He listed her impairments as chronic fibromyalgia, chronic fatigue syndrome, impingement syndrome shoulders, chronic migraines, anxiety disorder and neuropathy in the upper extremities. Hoffman noted that she could sit, walk or stand less than two hours a day and concluded that she was unable to work. AR 573-74. On April 2, 2007, Hoffman completed a second form listing the same diagnoses and limitations, again concluding that she was unable to work. AR 575-76.

Progress notes show that O'Donnell saw Dr. Hoffman for her chronic pain on June 14, 2007, April 23, 2008, August 18, 2008, October 20, 2008 and January 29, 2009. Although the notes are difficult to read, Hoffman wrote on April 23, 2008, that he had prescribed antibiotics for O'Donnell, who was feeling better. AR 577-81.

4

On February 16, 2009, Dr. Hoffman completed a medical statement and functional capacity questionnaire for O'Donnell.  He listed her impairments as fibromyalgia, chronic fatigue syndrome, scoliosis, impingement syndrome shoulders, chronic migraines, anxiety disorder and chronic disseminated Lyme disease.  AR 583.  He estimated that she could stand or walk for 15 minutes at a time and for one hour total in an eight hour day, and that she could sit for 30 minutes at a time and for a total of 2 hours in an eight hour day.  AR 585-6.  Hoffman indicated that O'Donnell needed frequent rest periods to lie down and could only lift less than ten pounds occasionally.  AR 587.  He also reported that she could neither raise or reach her arms overhead or even above her shoulder, nor push or pull leg controls.  AR 588.  Finally, he noted that she would miss more than four days of work a month.  AR 591.  As a result of these limitations, Hoffman concluded that O'Donnell could not sustain gainful employment.  AR 594.

On September 24, 2009, Hoffman wrote a letter, stating he had treated O'Donnell since 2005.  He explained that O'Donnell's symptoms suggested the "distinct possibility of exposure to Tick-Borne Illness-Lyme Disease."  He stated that the diagnosis of Lyme disease is primarily based on clinical evidence.  Hoffman noted that he treated O'Donnell with antibiotics.  He concluded that although O'Donnell had improved with treatment, she was still unable to pursue gainful employment.  AR 596.

## C.  Consulting Physician Reports

On May 30, 2007, state agency physician Michael Baumblatt completed a physical residual functional capacity assessment for O'Donnell, listing diagnoses of myalgias, arthralgias, back disorder, status post rod fusion for scoliosis, migraines and status post bilateral rotator cuff repair.  AR 480.  Baumblatt found that O'Donnell could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday with occasional climbing ladders, ropes and scaffolds and no exposure to hazards.  AR 481-84.  He disagreed with the treating source's opinion that O'Donnell could perform only light work for two hours and determined that she could perform light work for an eight-hour workday.  AR 486.

On September 24, 2007, state agency physician Pat Chan completed a physical residual functional capacity assessment for O'Donnell, listing diagnoses of status post bilateral shoulder arthroscopies, neck discomfort, myalgias and migraines.  AR 502.  Chan found that O'Donnell could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday with limited reaching in all directions, including overhead.  AR 503, 505.

On November 16, 2009, Dr. Michael Lockheart examined O'Donnell at the request of the ALJ.  Dr. Lockheart noted that she was taking an antibiotic, as well as over-the-counter pain medications, and that "She answers positively for every question."  AR 659.  O'Donnell asked if she could have African sleeping sickness because she sleeps 14 to 18 hours a day.  AR 660.  Upon examination, Lockheart found that O'Donnell had full range

of motion in her neck and decreased range of motion of back.  AR 660.  He concluded that she had chronic pain syndrome, major depressive disorder, chronic migraine headaches, chronic neck and back pain with no evidence of radiculopathy, history of shoulder impingement and history of documented symptom magnification.  AR 661.

Dr. Lockheart also completed a form concerning O'Donnell's work-related limitations, finding that she could lift and carry up to 20 pounds occasionally and could lift up to 20 pounds continuously.  AR 663.  Lockheart also indicated that she could sit for 20 minutes at one time, stand 15 minutes at one time and walk for 20 minutes at one time.  In an eight-hour workday, Lockheart found her capable of sitting a total of six hours, standing for two hours and walking for one hour.  AR 664.  Finally, Lockheart found she could reach overhead and operate foot controls only occasionally.  AR 665.


D.  Hearing Testimony

At the first hearing, O'Donnell testified that she had last worked in 2006 as a hair stylist for two-and-a-half hours every other day.  She quit working because holding her arms up was hurting her and she would become fatigued standing on her feet for that period of time.  O'Donnell also testified that she started experiencing severe migraines after her shoulder surgeries.  AR 32-33.

At that time, O'Donnell lived with her husband and five-month old baby.  She testified that on many days, she sleeps 12 to 17 hours a day and is essentially bed-ridden with Lyme disease.  On good days, she is able to drive and help out around the house.  AR

34. O'Donnell testified that she has taken an antibiotic for Lyme disease since 2006 or 2007, except when she was pregnant. AR 35. O'Donnell's doctor told her that during her pregnancy, the hormones killed off the bacteria from the Lyme disease. O'Donnell testified that she has seen some improvement in her symptoms with the antibiotic because she can read a little bit better. AR 36.

The ALJ called Dr. Thomas Maxwell to testify as a neutral medical expert about O'Donnell's physical impairments. When Maxwell asked O'Donnell if she was still drinking, she responded that she had stopped 13 years ago and did not take anything besides prescribed medication. AR 37. Maxwell recommended that O'Donnell have a consultative medical examination to obtain clinical findings about her physical impairments because there is no physical examination in the record showing what her limitations would be. AR 38-39.

Dr. Michael Lace testified as a neutral medical expert concerning O'Donnell's mental impairments. He opined that O'Donnell had post-traumatic stress disorder and would be limited to working in a low stress environment with only brief and superficial contact with coworkers, supervisors and the public. AR 40.

At the second hearing, O'Donnell testified that she is bedridden three weeks a month. One week a month, she is able to go to the YMCA and walk a half a mile around the track. She also goes to daily mass. AR 46-47. She testified that Dr. Hoffman had treated her for Lyme disease, chronic fatigue syndrome and fibromyalgia since 2005. AR 47.

Dr. Maxwell testified again at the second hearing, noting that O'Donnell had past surgeries for rotator cuff impingement in both shoulders, scoliosis of the spine with

placement of a rod in her spine, chronic pain syndrome and headaches.  Maxwell testified that there was no specific diagnosis of fibromyalgia and no identification of any trigger points.  Maxwell also indicated that a better diagnosis would be chronic pain syndrome because there are no clinical findings of any other disease.  Maxwell testified that there was no clinical evidence in the record to support a diagnosis of Lyme disease.  He also pointed out that (1) Dr. Hoffman acknowledged there were no lab tests confirming Lyme disease and (2) the clinical evidence that Hoffman refers to is not part of the record.  AR 48-49.

Maxwell further testified that O'Donnell's impairments singly and in combination did not meet a listed impairment. AR 49.  He then opined that O'Donnell's impairments limited her to sedentary work with (1) no climbing of ladders, ropes and scaffolds, (2) no exposure to unprotected heights and hazardous machinery, (3) occasional posturing, pushing and or pulling with upper and lower extremities, and (4) occasional reaching overhead with both upper extremities.  AR 50.

O'Donnell's lawyer questioned Maxwell about Dr. Lockheart's limitations on O'Donnell's activities, which were sitting for 20 minutes, standing for 15 minutes and walking for 20 minutes at a time.  Maxwell did not agree with these limitations because it was more helpful to speak in terms of the total length of time that O'Donnell could perform each activity in a workday.  He noted that Lockheart had also found O'Donnell could stand a total of two hours, walk a total of one hour and sit a total of six hours in an eight-hour work day.  AR 51.

Finally, the ALJ called Gregory Stuart Dohms to testify as a neutral vocational expert, asking him whether an individual who is limited to work with superficial contact with others and in a low stress environment could perform O'Donnell's past work as a hair stylist and receptionist. Dohms responded "no." AR 52. When the ALJ then asked if the hypothetical individual could perform jobs that existed in the national economy, Dohms identified the unskilled, sedentary jobs of ticket counter, call-out operator, sock mender, and food and beverage order clerk. AR 53-54. Dohms also testified that a requirement that the individual alternate between sitting, standing and walking after some minutes would not change the jobs identified. AR 54-55.

OPINION

A federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Where conflicting evidence allows reasonable minds to differ about whether a claimant is disabled, the responsibility for that decision falls on the [C]ommissioner, or the [C]ommissioner's designate, the ALJ." *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) (citation omitted). Thus, a reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility

or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

O'Donnell states that she is renewing her arguments made before the Appeals Council, as well as challenging the ALJ's findings related to her Lyme disease and the opinion of her treating physician, Dr. Hoffman. *See* Pltf's Br., dkt. 8. Her arguments generally relate to the ALJ's assessment of her impairments and residual functional capacity. In addition, O'Donnell has filed a letter from Dr. Hoffman that was not before the ALJ at the time of the hearing. These issues are addressed in turn below.

### A. Lyme Disease

O'Donnell argued to the Appeals Council and in her briefs to this court that the ALJ erred in failing to find that her Lyme disease constituted a severe impairment that prevents her from working. Under the Social Security Act, 42 U.S.C. § 223(d)(3), an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." A claimant's statements alone cannot establish an impairment. 20 C.F.R. § 404.1508, § 404.1528(a). In addition, "[t]he mere presence of some impairment [in the medical records] is not disabling per se." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983); *see also Garmon v. Apfel*, 210 F.3d 374, at *4 (Table) (7th Cir. Mar. 22, 2000) (rejecting claimant's argument that he had severe impairment because he sought medical treatment for various symptoms).

O'Donnell relies on the progress notes and opinions of Dr. Hoffman as medical evidence that she suffers from late-stage, chronic disseminated Lyme disease.  In Social Security cases, a treating physician's opinion is entitled to controlling weight if it is "well supported by medical findings and not inconsistent with other substantial evidence in the record."  *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2)).  Further, even when the treating physician's opinion is not entitled to controlling weight, the administrative law judge must give a "sound explanation" for rejecting that opinion and discuss the weight given to the various other medical opinions in the record.  *Punzio v. Astrue*, 630 F.3d 704, 709-10 (7th Cir. 2011); 20 C.F.R. §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii).  Factors the ALJ should consider in evaluating a treating physician opinion include the length, nature, and extent of the treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency and supportability of the physician's opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

In this case, the ALJ extensively reviewed Dr. Hoffman's records, as well as those of the designated medical expert and the examining and non-examining consulting physicians. The ALJ ultimately rejected Dr. Hoffman's opinion that O'Donnell was severely impaired by Lyme disease and could not work more than two hours a day because it was completely unsubstantiated by evidence in the record.  Although Hoffman wrote that he had treated O'Donnell since 2005 and expressed his opinion about her functional limitations, the ALJ

correctly noted that it was unclear from the medical records whether Hoffman *ever* examined O'Donnell.  Both the ALJ and the medical expert, Dr. Maxwell, pointed out that Hoffman did not cite any laboratory findings or clinical signs of O'Donnell's Lyme disease and prescribed antibiotics for O'Donnell based on the fact that she reported exposure to ticks as a child and exhibited "a number of symptoms associated" with the disease.  AR 16.  Because Dr. Maxwell found Hoffman's notes medically insufficient to permit him to form an opinion about O'Donnell's functional capacity, he requested that the ALJ order a consultive examination.  AR 17.

The consulting physician, Dr. Lockheart, found that O'Donnell could sit for 20 minutes, stand for 15 minutes and walk for 20 minutes at one time, but that in an eight-hour day, she could also sit for a total of six hours, stand for a total of two hours and walk for one hour.  Although O'Donnell interprets these findings to mean that she can not perform full-time sedentary work, the ALJ did not find the minutes per position to be dispositive  because Lockheart found O'Donnell capable of sitting and standing the total number of hours in an eight hour day necessary to perform sedentary work.  As the ALJ noted in his opinion, the vocational expert testified that alternating between sitting, standing and walking after some minutes would not change the number or type of jobs available in the national economy to someone with O'Donnell's limitations.  In addition, no physician other than Dr. Hoffman found that O'Donnell could not perform limited sedentary work on a full-time basis.  As a result, the ALJ articulated good reasons for her rejecting the

opinion of Dr. Hoffman in favor of the opinions of Dr. Maxwell, Dr. Lockheart and the other state agency physicians.

The ALJ also considered O'Donnell's testimony that Lyme disease caused her disabling fatigue, but found the testimony not entirely credible.  Generally, an ALJ's determinations regarding credibility are entitled to deference because the ALJ has the ability to see and hear the testimony, but that deference does not excuse an ALJ from explaining the reasons for her determination. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010).  The ALJ must build an "accurate and logical bridge" between the evidence and his decision. *Id.*  Still, a credibility determination will be overturned only if it is "patently wrong." *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) ("It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong.'").

In this case, the ALJ noted that O'Donnell had reported activities of daily living that were inconsistent with being bed-ridden, including taking a number of out-of-town trips with others to Chicago and Minneapolis, routinely performing self-care, regularly walking on the track at the YMCA, attending daily mass, preparing small meals, shopping for groceries with her husband, and assisting in the care of her infant child, who was born in 2008.  The ALJ noted that even if O'Donnell remained in bed all day, it was difficult to attribute that to a disabling condition based on the scant evidence before her.  The ALJ also pointed out that in 2001 and 2004, O'Donnell's health care providers had noted she was prone to symptom magnification and was convinced that her shoulder conditions would prevent her from

14

working, even though the surgeries had gone well and she had good strength and range of motion.  AR 14-15.  Because the court finds the ALJ's credibility determination to be well-reasoned and supported by the record, this is not one of those rare instances requiring reversal because the ALJ's findings were patently wrong.

In sum, the ALJ built a sufficiently accurate and logical bridge from the evidence to her conclusion that O'Donnell was not severely impaired from Lyme disease and did not suffer disabling limitations from the condition.  Further, even though she found no evidence of Lyme disease, the ALJ did credit at least some of O'Donnell's complaints of pain and fatigue in finding that she was severely impaired with chronic pain syndrome and limited to sedentary work.

## B.  Additional Evidence

As previously noted, O'Donnell submitted a letter dated April 2, 2010, in which Dr. Hoffman explains why he diagnosed O'Donnell with chronic fatigue syndrome and fibromyalgia when he had stated in previous correspondence that chronic disseminated Lyme disease is often misdiagnosed as those conditions.  *See* Attachment to dkt. 8.  Because this evidence was not part of the record before the original ALJ and was not considered by the Appeals Council in a decision on the merits, this court cannot consider it in reviewing the ALJ's decision.  *See* 42 U.S.C. § 405(g); *Wolfe v. Shalala*, 997 F.2d 321, 322 n.3 (7th Cir. 1993); *Eads v. Secretary of Dep't of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993).

Under sentence six of § 405(g), however, a district court may remand in light of additional evidence without considering the correctness of the commissioner's decision, but only if the evidence is new and material and there is good cause for the failure to produce the evidence before the ALJ.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). Evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).  New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered.  *Id.* (citing *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review."  *Id.* (citing *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990)).

Although Dr. Hoffman composed his letter after the hearing, he fails to discuss any "new" findings that were not in existence at the time of the hearing.  The letter is essentially Hoffman's rebuttal to the ALJ's decision and includes an opinion he formed before the hearing took place.  O'Donnell could have submitted a similar letter from Hoffman at the time of the hearing.  Further, O'Donnell was represented by an attorney at the hearing, and an applicant represented by counsel is presumed to have made her "strongest case for benefits." *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987). Accordingly, this court will not remand this case pursuant to sentence six of § 405(g) for consideration of the additional evidence submitted by O'Donnell alone.

16

ORDER

IT IS ORDERED that the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Annette O' Donnell's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case

Entered this 17th day of December, 2013.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

17